## Commonwealth *v.* Twenty Full Cases of Beer (et al., Appellants).

Argued October 1, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Leon Ehrlich,* with him *Samuel R. Liever,* for appellants.

*Linn H. Schantz,* Deputy Attorney General, with him *Horace A. Segelbaum,* Deputy Attorney General, and *T. McKeen Chidsey,* Attorney General, for appellee.

OPINION BY ROSS, J., November 9, 1948:

Enforcement officers of the Liquor Control Board on November 8, 1946, on a public highway in Berks County, seized a Dodge coupe owned by Joseph F. Kester and operated by Edward Guilfoyle, and a Buick sedan owned by Miriam Uhl and operated by her husband, Harry Uhl.

At the time of the seizure, each automobile contained twenty cases of quart bottles of beer. The Commonwealth filed petitions for forfeiture of the automobiles and the beer under the provisions of section 611(b) of the Pennsylvania Liquor Control Act as re-enacted and amended June 16, 1937, P. L. 1762, 47 PS 744-611(b) and section 26 of the Beverage License Law as re-enacted and amended June 16, 1937, P. L. 1827, 47 PS 100i. After rules to show cause were issued, answers filed and hearing, the court below ordered forfeiture of the automobiles and the beer, and these appeals were taken.

Section 26 of the Beverage License Law provides: ". . . It shall be unlawful for any person to transport for another any malt or brewed beverages within this Commonwealth unless such person shall hold a permit issued by the board. . . ." It is admitted that neither the owners nor the operators of the automobiles had such a permit. The petitions alleged that the beer being transported was the property of Edgar Fernault, a liquor licensee in Philadelphia. The answers averred that the beer was the property of Harry Uhl. This is the only issue of fact involved and it was resolved in favor of the Commonwealth by the trial judge who found as a fact that "The beer seized by the state agents was the property of Edgar Fernault".

The uncontradicted testimony shows the following: The beer was purchased at a brewery in Mt. Carmel. The automobiles had been used on a number of occasions—the last, two days before the seizure—to transport beer purchased for Fernault from the same brewery to his licensed place in Philadelphia. On each of those trips Harry Uhl drove the Buick and Fernault drove the Dodge, and each time empty beer cases were returned from Fernault's place to the brewery and credit therefor given on the new purchase. On the day of the seizure, Fernault did not make the trip and the Dodge was driven by Guilfoyle. Fernault gave Uhl $200 to purchase beer for him and returned fifty-three empty cases and paid the balance in cash. Clearly from this testimony,

the only possible inference that can be drawn is that the beer being transported at the time of the seizure was the property of Fernault.

However, Uhl testified that he was instructed to purchase *pint* bottles of beer for Fernault, that when he got to the brewery no pints were available so he purchased the quarts for himself to take to his farm in Maryland where he was planning to have a "corn husking party", and that on the day *after the seizure* he returned the $200 to Fernault "plus $39.75, I think, which I had owed him for the empties". Uhl was corroborated by Fernault as to the instructions to purchase "pints" and the return of the money.

Uhl's claim of ownership of the beer depends upon his credibility and the trial judge who saw the witnesses and heard the testimony concluded: "On the whole testimony we have no doubt whatever that the story of the corn husking was not a correct account of the ownership of the beer, nor of the purpose for which it was being transported", and from our own examination of the record we are not disposed to disagree with the trial judge's appraisal of the testimony.

It is not contended, of course, that the legislature may not in one statute define a crime and in another fix the penalty. However, appellants contend that since the legislature did not in the Beverage License Law provide for forfeiture of vehicles, etc., used in the unlawful transportation of "malt and brewed beverages" it did not intend that the forfeiture provisions of the Liquor Control Act should apply to the illegal transportation of such beverages. We are unable to agree with this contention.

Section 611(a) of the Liquor Control Act provides: "No property rights shall exist in any . . . malt or brewed beverage illegally possessed, or in any . . . vehicle . . . used in the illegal . . . transportation of . . . malt or brewed beverages, and the same shall be deemed contraband and shall be forfeited to the Com-

monwealth. . . ." Section 611(b) provides: "If, upon petition as hereinafter provided and hearing before the court of quarter sessions, it appears that any . . . malt or brewed beverage was so illegally possessed, or property so used in the illegal . . . transportation of . . . malt or brewed beverage, such . . . malt or brewed beverage or property shall be adjudged forfeited and condemned. . . ."

"Illegal transportation" of malt or brewed beverages is not defined in the Liquor Control Act but only in the Beverage License Law and since these statutes are in pari materia they must be construed together as one law. Statutory Construction Act of May 28, 1937, P. L. 1019, section 62, 46 PS 562. The offense is defined in one statute and the in rem penalty therefor in another. It is our opinion that the legislature intended the forfeiture provision of section 611(b) of the Liquor Control Act to apply to the unlawful transportation for another of malt or brewed beverages as defined in section 26 of the Beverage License Law.

The Commonwealth had the burden of proving by a preponderance of the evidence the facts necessary to sustain a forfeiture (*Com. v. Three Halves of Old Fashioned Beer*, 162 Pa. Superior Ct. 191, 56 A. 2d 333) and, in our opinion, that burden was met.

Orders affirmed.